SOPHIE PROKOPOWICZ, PETER PROKOPOWICZ, MARY KRUPICA and JOHN KRUPICA, Appellants, *v.* 11 WEST 42ND STREET, INC., Defendant, and OTIS ELEVATOR COMPANY, Respondent.

Second Department, March 9, 1942.

*Robert R. Bauman,* for the appellants.

*Bertrand L. Pettigrew,* for the respondent.

Action to recover damages for personal injuries and for loss of services. The two female plaintiffs were injured when an elevator, installed by the respondent, fell four stories and struck the buffer at the bottom of the shaft. The elevator was installed in 1926, and the accident occurred in 1938. It is alleged that the elevator was inherently dangerous because it did not include in its electrical system a safety device that would stop a falling car more quickly than it would be stopped in the normal operation of the devices actually present in the system. At the close of plaintiffs' case the trial justice directed a nonsuit as to the Otis Elevator Company.

Judgment, in so far as appealed from, affirmed, with costs, on the ground that plaintiffs failed to establish a *prima facie* case, in that there was lacking proof of custom in respect of the usual installations in 1926 requiring or having a device known and described as an LA-4 contact.

CARSWELL, ADEL and TAYLOR, JJ., concur; HAGARTY, J., dissents and votes to reverse the judgment, in so far as appealed from, and to grant a new trial, with opinion; LAZANSKY, P. J., concurs with HAGARTY, J.

HAGARTY, J. (dissenting). I dissent and vote to reverse the judgment, in so far as appealed from, and to grant a new trial.

The complaint as to the respondent was dismissed at the close of plaintiffs' case. The testimony of the female plaintiffs is that they were two of approximately ten cleaning women who were passengers in an elevator in a building at No. 11 West Forty-second street, Manhattan, during the late afternoon of August 3, 1938. The operator ascended beyond the sixth floor. His attention was called to the fact that some of the passengers desired to get out at that floor. He endeavored to return but the elevator, instead of stopping at that floor, drifted to the fourth floor and from there dropped " like a stone " to the pit.

The respondent had installed this elevator in the building, together with five others, in 1926 and 1927. The wiring specification, as shown by the drawing or plan in evidence, included the installation of an LA-4 contact in each of the elevators. The LA-4 contact was installed in the other five elevators. The proof is sufficient upon which to find that it was not installed in the elevator here involved and that the accident would not have happened had the omission been supplied.

The overload relay, known as " 03," was found, upon examination after the accident, to be in open position, and nothing had been disturbed in the interval between the happening of the accident and such examination. This relay may be tripped by a surge of electric current or even by " inching " the elevator with a fairly heavy load, which is an ordinary operation when the operator seeks to place the elevator floor in alignment with a floor of a building. The expert proof is to the effect that the tripping of the relay would cause descent until such tripping reacted on " C " switch to brake the elevator, excluding the use of independent safety devices. When " 03 " opened, it caused " L " switch to open. Had there been installed the contact known as LA-4, the opening of " L " switch immediately would have caused the opening of " C " switch. In the absence of such contact an appreciable interval ensued before the opening of " C " switch. When " L " switch was knocked out a contact with " J " switch was also opened. This latter switch, in turn, reacted upon " C " switch, but only after the generator had died down. Tests showed that this reaction would not occur until the elevator had fallen a space of seven floors.

Undoubtedly, the operator could have stopped the elevator by turning the power switch down or by opening the elevator gate. Putting the car switch handle in neutral would not necessarily have stopped the car, particularly if the car had not previously come to a definite stop with the handle in neutral at the time

the relay tripped. The testimony of the plaintiffs was to the effect that there was no such definite stop. The jury could find that the operator, despite his own testimony, did not turn off the power switch, but instead frantically worked his car switch handle, which had the effect of delaying the dying down of the generator.

I am of opinion that the respondent may be held liable, irrespective of human fallibility, if it negligently omitted to provide a device, as the result of which omission the elevator would plummet earthward for seven or more floors. Such a machine was inherently dangerous, or so a jury could find. The manufacturer owed the public a duty so to construct the elevator as to make it safe, irrespective of its contractual obligations. (*Kahner* v. *Otis Elevator Co.*, 96 App. Div. 169; affd., 183 N. Y. 512.)

The complaint was dismissed as against respondent because of alleged failure of plaintiffs to prove that it was customary to include the LA-4 contact at the time of the installation of this elevator. Proof of custom, at best, in my opinion, would be only one factor in determining whether or not the respondent had breached its duty to the public. It is immaterial in this case, in any event, if plaintiffs' proof that the omission was unlawful be accepted. The existence of rule 18 of the Rules of the Board of Standards and Appeals of the City of New York, as of the time of the construction here involved, not only was proved, but judicial notice of it was taken by the trial court. This rule provides, in so far as material, that in future installations, every electric elevator shall be equipped with an electric or electro-mechanical brake that will bring the car to rest " when any of the electric safety devices operate." It is not disputed that the overload relay was installed by the respondent and its attorney conceded that plaintiffs had shown affirmatively that overload devices were in general use. The proof of plaintiffs' experts is that the overload relay was a safety device and that its presence required the installation of the LA-4 contact, pursuant to the provisions of rule 18 of the Rules of the Board of Standards and Appeals. If this proof was accredited by the jury, respondent was bound by law to install the contact. Under such circumstances, the element of custom is immaterial. There should be a reversal of the judgment, in so far as appealed from, and a new trial.

LAZANSKY, P. J., concurs.